IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARK MARSH | * |
| | * |
| v. | * |
| | *   Civil No.  JKS 08-1962 |
| MICHAEL J. ASTRUE | * |
| Commissioner of Social Security | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Mark Marsh brought this action pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.  The parties consented to referral to a United States Magistrate Judge for all proceedings and final disposition.  Marsh's and Astrue's motions for summary judgment are ready for resolution and no hearing is deemed necessary.  *See* Local Rule 105.6.  For the reasons set forth below, Marsh's motion for summary judgment will be denied, and Astrue's motion for summary judgment will be granted.

**1. Background.**

Marsh filed an application for DIB on November 19, 2002, (R. 54), alleging an onset of disability on March 15, 2002.  (R. 92, 201).  Following denial of his claims initially and on reconsideration, an Administrative Law Judge (ALJ) held a hearing on April 5, 2004, at which Marsh was represented by an attorney.  (R. 198).  On May 19, 2004, the ALJ found that Marsh was not disabled within the meaning of the Act.  (R. 11-22).  The Appeals Council denied Marsh's request for a review, rendering the ALJ's determination as the final decision of the Commissioner of Social Security.  (R. 5-7).  Marsh filed a complaint with this court, and on June 3, 2005, this court remanded Marsh's claims.  (R. 240-47).  On January 12, 2007, the ALJ held a

second hearing, (R. 383), and on May 12, 2007, again found that Marsh was not disabled within the meaning of the Act. (R. 224-39). The Appeals Council affirmed the ALJ's decision on May 29, 2008. (R. 215-17).

**2. ALJ's Decision.**

The ALJ evaluated Marsh's DIB claim using the five-step sequential process set forth in 20 C.F.R. §§ 404.1520. First, the ALJ determined that Marsh has not engaged in substantial gainful activity since the alleged onset date of March 15, 2002. (R. 230). At step two, the ALJ concluded that Marsh suffers from the following severe impairments: degenerative joint disease status post left knee replacement and unspecified arthropathies. (R. 230). However, at step three the ALJ determined that Marsh's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 233). In evaluating Marsh's residual functional capacity (RFC) at step four, the ALJ found that Marsh had the ability to perform less than a full range of sedentary level work and was thus unable to return to his past relevant work. (R. 233-37). At step five, the ALJ found that considering Marsh's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 238). As a result, the ALJ determined that Marsh was not disabled within the meaning of the Act. (R. 239).

**3. Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*,

305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

**4. Discussion.**

Marsh raises three issues in his appeal.  First, he claims that the ALJ failed to consider all of the impairments alleged in determining whether he had a disability.  Second, Marsh claims that the ALJ failed to consider all opinion evidence in determining whether he had a disability.  Third, he claims that the ALJ erroneously determined that Marsh retained the ability to perform work in the existing economy.

A.  The ALJ Properly Considered Marsh's Alleged Impairments.

Marsh's first claim is that the ALJ failed to consider all of the alleged impairments in determining whether he had a disability.  Specifically, Marsh claims that the ALJ failed to adequately address Marsh's unspecified arthropathies in his right leg.  Marsh also alleges that the ALJ failed to make a determination as to Marsh's obesity.  An ALJ is required to consider the impairments a claimant alleges to have or about which the ALJ receives evidence.  20 C.F.R. § 404.1512(a).

Contrary to Marsh's contention, the ALJ did consider all of Marsh's impairments.  Marsh's argument focuses its concern on the ALJ's reference to "unspecified arthropathies" without acknowledging the pages of substantial evidence, fully discussed by the ALJ (R. 230-32), supporting the ALJ's conclusion.  Notably, the ALJ found that Marsh's impairments were more

restricted than had been determined by a number of the medical sources.  The ALJ's decision shows that he considered Dr. Whicker's report that Mr. Marsh had pitting edema in both legs and that the evident edema and palpable tender cords produced pain-related weakness in his legs, (R. 232).  The report does not specify a particular impairment beyond identifying edema. (R. 372).  Also, despite Dr. Whicker's opinion that Marsh could lift up to 20 pounds occasionally and 10 pounds frequently, (R. 373), the ALJ found that Marsh retained the ability to perform only a limited range of sedentary work.  (R. 233).

   The reports from Marsh's Worker's Compensation litigation also do not demonstrate error with the ALJ's finding.  Although Dr. Gaber rated Marsh with a 15% impairment of his right leg due to phlebitis, he noted that there was no evidence of current phlebitis.  (R. 176).  As phlebitis is associated medically with deep vein thrombosis (DVT) and the record shows that neither was an active impairment at the time of Dr. Gaber's examination, the ALJ's finding of arthropathy of the right leg credits Marsh with a greater degree of limitation than Dr. Gaber did.

   The ALJ's conclusion as to the effect of Marsh's obesity is also supported by substantial evidence.  An ALJ is to consider a claimant's obesity throughout the sequential process.  Soc. Sec. Ruling (SSR) 02-1p at *3.  Although there is no specific level of body weight or Body Mass Index that equates to a "severe" impairment, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.  SSR 02-1p at *4.  If the obesity is of such a level that it results in an inability to ambulate effectively, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria).  SSR 02-1p at *5.

   Here, the ALJ specifically considered the issue of obesity with respect to severity and whether it meets or equals a listing.  He found that Marsh may be obese, but that the obesity did

not contribute to any inability to ambulate effectively. (R. 233). The ALJ further noted that Marsh did not have any significant pulmonary or heart problems to associate with his obesity. (R. 233). The ALJ's conclusion that obesity did not cause Marsh's condition to meet or equal a listing properly followed the analysis required by SSR 02-1p.

B.  The ALJ Properly Considered All Medical Opinion Evidence.

Marsh's second claim is that the ALJ failed to consider all opinion evidence. To determine whether an individual has a disability, the ALJ is required to consider medical opinions and other relevant evidence. 20 C.F.R. § 404.1527(b). A medical opinion is a statement, from an acceptable medical source, reflecting judgments about the nature and severity of an individual's impairment, including symptoms, diagnosis and prognosis, and what he can still do despite impairments and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). Regardless of its source, the ALJ will evaluate every medical opinion submitted. 20 C.F.R. § 404.1527(d). Certain opinions are not considered medical opinions and are instead opinions on issues reserved to the Commissioner to decide. Such non-medical opinions include statements that an individual is "disabled" or "unable to work" or opinions about the individual's RFC or the application of vocational factors. 20 C.F.R. § 404.1527(e)(1, 2). The ALJ does not have to give any special significance to the source of an opinion on an issue left to the Commissioner to decide. 20 C.F.R. § 404.1527(e)(3).

Here, the ALJ addressed all of the medical opinion evidence submitted. The ALJ's decision fully considered and weighed the actual opinions of Marsh's treating physician Dr. Levitt, the examining physician Dr. Whicker, and the State agency medical consultant. (R. 230-37).

Marsh argues that the ALJ should have considered the vocational evaluation report, which, he argues, stated that his "academic abilities and physical limitations precluded work."

(Pl.'s Mem. Summ. J. 5).  Marsh concludes that because the adversarial vocational service was "not likely to do Marsh any favors," the ALJ should have at least considered the statement.  *Id.* at 5-6.  However, a favorable statement made in an adversarial report does not convert a vocational evaluation report into a proper medical opinion.  The vocational report makes no specific forecast as to Mr. Marsh's ability to work and does not explain the severity of his impairments or provide any analysis of his functional abilities.  (R. 183-91).  Even if the report could be read to state, in effect, that Marsh's limitations precluded work, such a statement is not legally acceptable as a medical opinion.  Moreover, the opinion contained in the evaluation report is an application of vocational factors, which is an issue ultimately reserved to the Commissioner to decide.  Because the vocational evaluation is not legally recognized as a medical opinion, the ALJ was not required to consider it in determining whether Marsh had a disability.

   C. The ALJ Properly Determined that Marsh Retained the Ability to Perform Work in the Existing National Economy.

Marsh's third claim is that the ALJ erroneously determined that Marsh retained the ability to perform work in the existing national economy.  Specifically, Marsh argues that the ALJ failed to account for Marsh's need to use a cane to assist in walking and his low level of literacy.  At the final step of the sequential evaluation, the Commissioner must show that the claimant can engage in an alternative job existing in the national economy, consistent with the claimant's RFC, age, education, and past work experience.  *McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983); 20 C.F.R. § 404.1520(f).  Ordinarily, the Commissioner may carry that burden through the use of the Medical-Vocational guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Grids).  However, when the claimant has significant non-exertional limitations that significantly erode at his occupational base, the Grids are not conclusive as to disability.

*Harvey v. Heckler*, 814 F.2d 162, 164 (4th Cir. 1987). Instead, a vocational expert (VE) must testify that specific jobs exist in the national economy which the claimant retains the functional capacity to perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). For a VE's opinion to be relevant or helpful to an ALJ, it must be based in response to proper hypothetical questions which fairly set out all of the claimant's impairments, and the VE must have knowledge of the claimant's abilities and impairments. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989).

The ALJ's conclusion that Marsh retained the ability to perform work in the existing national economy is supported by substantial evidence. The ALJ based his determination on the VE's opinion that a hypothetical individual with Marsh's limitations could perform alternative jobs. The ALJ asked the VE to assume an individual of Mr. Marsh's age, education, and work experience who was limited to sedentary work. (R. 411). The ALJ restricted the individual from climbing ropes, ladders, or scaffolds; crouching; or crawling. The individual could perform other postural activities on an occasional basis and was to avoid work requiring use of foot controls with his lower extremities. The VE testified that such an individual could not perform any of Marsh's past relevant work. (R. 411). The VE then testified that such an individual could perform work as a final assembly worker (42,000 jobs nationally), administrative support worker: addresser (42,000 positions nationally), and order clerk specific to the food and beverage industry (137,000 positions nationally). (R. 412). When the VE accounted for the need to use a cane to assist in walking, only the addresser job was excluded. (R. 413). The remaining occupations cited by the VE—order clerk and final assembly worker—still represent a significant number of jobs in the national economy that Marsh can perform.[1]

---

[1] Although Marsh's attorney had asked the VE to restrict the hypothetical individual from performing all postural activities, (R. 414), this limitation was not accepted by the ALJ. The ALJ ultimately found that Marsh could occasionally perform some postural activities, (R. 233), and held that a total restriction against all postural activities was not supported by the record. (R. 239). Marsh's treating physician Dr. Levitt indicated that Marsh could occasionally balance, stoop, or crouch, (R. 121), and the

As to Marsh's literacy, the ALJ determined that the record does not show that Marsh is illiterate or unable to communicate in English.  In evaluating a claimant's educational level, the Commissioner will consider various categories: illiteracy, marginal education, limited education, high school education and above, and inability to communicate in English.  20 C.F.R. § 440.1564(b).  Illiteracy means the inability to read or write.  An individual is illiterate if he or she cannot read or write a simple message even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling.  20 C.F.R. § 440.1564(b)(1).  The regulations specify that marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.  Formal schooling at a 6th grade level or less is generally considered a marginal education.  20 C.F.R. § 440.1564(b)(2).

Here, Marsh reported that he completed 12th grade and was not in special education classes.  (R. 98).  He also testified that he wrote out the daily activities questionnaire.  (R. 404).  The ALJ recognized that Marsh performs reading at a 6th grade level and arithmetic at a 3rd grade level, according to the achievement testing provided by a vocational consultant.  (R. 236).  Marsh's levels of reading and arithmetic indicate that he has at least a marginal education.  Further, the evidence supports the ALJ's determination that Marsh is not illiterate or unable to communicate in English.  (R. 236).  The ALJ's finding that Marsh was capable of doing simple, routine or unskilled tasks demonstrates that Marsh can perform the unskilled occupations identified by the VE.[2]  (R. 236-39).

---

state agency physician limited him to occasional postural activities: climbing, stooping, balancing, kneeling, or crouching.  (R. 150).

[2] Marsh asserted in his Memorandum in Support of Motion for Summary Judgment that he is disabled because he meets the criteria of Vocational Rule 201.17 of 20 C.F.R. § 404 Subpart P Regulations No. 4 Appendix 2 Table 1.  However, because Marsh is not illiterate or unable to communication in English, he does not meet the criteria of 201.17.

**5. Conclusion**

      For the foregoing reasons, Marsh's motion for summary judgment will be denied.  A separate Order will be entered.

Date:  September 3, 2009                                              /s/
                                                                                  JILLYN K. SCHULZE
                                                            United States Magistrate Judge